340 So.2d 700 (1976)
BALL MARKETING ENTERPRISE, Plaintiff and Appellee,
v.
RAINBOW TOMATO COMPANY et al., Defendants and Appellants.
No. 5727.
Court of Appeal of Louisiana, Third Circuit.
December 21, 1976.
Edwards, Stefanski & Barousse by Homer E. Barousse, Jr., Crowley, for defendants-appellants.
Robert P. Brenham, Lafayette, for plaintiff-appellee.
*701 Before CULPEPPER, WATSON and GUIDRY, JJ.
CULPEPPER, Judge.
This is a suit on an open account. Defendants are the debtor, Rainbow Tomato Company (Rainbow) and its alleged surety, Plant Industries, Inc. (Plant). The trial court rendered a judgment by default against both Rainbow and Plant declaring them liable to plaintiff "jointly and solidarity" for $11,069.78 due on the open account. Only the defendant Plant appealed.
The principal issue on appeal is whether a certain letter constitutes a continuing guarantee that Plant will pay the open account owed by Rainbow.
The letter, dated January 22, 1976, from Hyman Katz, Chairman of the Board of Plant Industries, Inc., addressed to Charles Goss of Ball Marketing Enterprises, states:
"Gentlemen:
"You have advised us that Rainbow Tomato Company, Inc. (`Rainbow') is indebted to you in the amount of $8,408.40 for deliveries of fuel oil made from December 19, 1975 through January 7, 1976. This will confirm our understanding with you that Plant Industries, Inc. will take such steps as are necessary to assure payment to you by Rainbow of amounts due for past and future deliveries of fuel oil to Rainbow, to the extent necessary for heating its greenhouses. (Emphasis supplied)
/s/ Hyman Katz
Chairman of the Board"
Plaintiff describes this letter as a "continuing guaranty" obligating Plant to pay plaintiff amounts due for past and future deliveries of fuel oil to Rainbow.
In Louisiana, a contract of guaranty is equivalent to a contract of suretyship. The two terms are used interchangeably. American Bank & Trust Company v. Blue Bird Restaurant & Lounge, 279 So.2d 720 (La.App. 1st Cir. 1973), affirmed 290 So.2d 302 (La.1974). Therefore, we will look to the provisions of our Civil Code governing the contract of suretyship to test plaintiff's assertion that the letter is a continuing guaranty.
LSA-C.C. Article 3035 defines the contract of suretyship:
"Suretyship is an accessory promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not."
LSA-C.C. Article 3039 explains:
"Suretyship can not be presumed; it ought to be expressed, and is to be restrained within the limits intended by the contract."
A general rule which emerges from the substantial body of jurisprudence interpreting these provisions is that the surety's contract need not observe technical formalities but must contain an absolute expression of intent to be bound. See Hubert, The Nature and Essentials of Conventional Suretyship, 13 Tul.L.Rev. 519, 525 to 526 (1939) and cases discussed therein. The letter from Plant to plaintiff does not contain an absolute expression of intent to pay Rainbow's open account. It provides, instead, that Plant, "will take such steps as are necessary to assure payment * * * by Rainbow * * *". The letter clearly contemplates payment by Rainbow, not Plant. If we were to presume otherwise, we would violate the express instructions of Article 3039: "Suretyship can not be presumed. . .." Therefore, we hold that the letter did not bind Plant as a surety or guarantor.
Our holding is consistent with the bulk of the jurisprudence interpreting Article 3039 and is supported particularly by the decision of our Supreme Court in Exchange National Bank v. Waldron, 177 La. 1015, 150 So. 3 (1933). In Waldron, the alleged surety wrote a letter to the creditor stating "we are behind Mr. Waldron [the debtor] and are financing him and we feel that you are perfectly safe on this sort of a contract. . .." The court held that this vague statement of support fell short of the stringent requirements set by Article 3039. Likewise, Plant's promise to "take such steps as are necessary to assure payment" *702 by Rainbow is insufficient to bind Plant as a surety or guarantor.
Plaintiff argues that the language of the letter is ambiguous and should, therefore, be construed against Plant, the party who drafted it. LSA-C.C. Articles 1957 and 1958. We do not agree. The critical part of the artfully drafted letter is unambiguous, in that it assures payment by Rainbow rather than Plant. Even if we were to agree that the letter is ambiguous, we could not presume that it creates a contract of suretyship. Articles 1957 and 1958 embody rules of general application which would yield in the present case to the special rule of construction laid down in Article 3039. The controlling rule is that a contract of suretyship cannot be presumed.
Having decided the principal issue, we move now to consideration of plaintiff's second argument.
Attached to plaintiff's original petition is a request for admissions under LSA-C.C.P. Article 1496, directing Plant to answer this question:
"Do you admit executing a continuing guaranty unto petitioner, Ball Marketing Enterprises, Inc., dated January 22, 1976, a copy of which is attached to this request for admissions?" (The previously quoted letter was attached.)
Plant did not answer this request. Plaintiff argues that by its failure to answer, Plant is deemed to have admitted executing a "continuing guaranty" agreement. LSA-C.C.P. Article 1496 is the authority cited in support of this contention.
We faced a similar argument in a nearly identical procedural setting in Vincent v. Lewis, 275 So.2d 414 (La.App. 3rd Cir. 1973). There, defendant answered neither plaintiff's petition nor plaintiff's request for admissions, and a judgment by default was rendered against him. Plaintiff contended that the defendant's failure to timely answer the request for admissions amounted to a "confession" of judgment under LSA-C.C.P. Article 2085. We rejected this argument with the following passage from Voisin v. Luke, 249 La. 796, 191 So.2d 503 (1966), explaining the intended scope of Article 1496:
"[I]ts purpose is to eliminate the necessity of proving uncontroverted facts. It may not, therefore, be applied to a controverted legal issue lying at the heart of a case." (Emphasis supplied) 275 So.2d 416.
The question of whether the letter constitutes a contract of suretyship (continuing guaranty) is the controverted legal issue lying at the heart of the present case. Therefore, Plant's failure to answer is not deemed an admission that the letter constitutes a contract of continuing guaranty.
Plaintiff's interpretation of Article 1496 not only contravenes its intended purpose, but also exceeds its authorization. A careful reading of the article reveals that it does not authorize a request for admission of a conclusion of law. Instead, the article authorizes only requests for admission of matters of fact and the genuineness of documents. To the extent the request seeks an admission of a conclusion of law, it exceeds the authorization granted by Article 1496. Under the circumstances, Plant's failure to answer is merely an admission that the letter was written and signed by a representative of Plant. It is not an admission of the legal effect of the letter.
For the reasons assigned, the judgment appealed is reversed and set aside insofar as it holds Plant Industries, Inc. to be liable to the plaintiff. All costs of this appeal are assessed against the plaintiff.
REVERSED AS TO PLANT INDUSTRIES, INC.